UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NAVEGAR NETWORK ALLIANCE, LLC, ET AL. | CIVIL ACTION |
| VERSUS | NO: 17-6368 |
| SUTTER EAST BAY HOSPITALS & QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC. | SECTION: "A" (3) |

## ORDER AND REASONS

The following motions are before the Court: **Motion to Compel Arbitration and/or Stay (Rec. Doc. 18)** filed by defendant Sutter East Bay Hospitals; **Motion to Stay Claims Pending Arbitration (Rec. Doc. 22)** filed by defendant Quest Diagnostics Clinical Laboratories, Inc. Plaintiffs Navegar Network Alliance, LLC f/k/a Navigant Network Alliance, LLC, and UNO Health International, Inc. oppose the motions. The motions, submitted on July 26, 2017, are before the Court on the briefs without oral argument. For the reasons that follow, the motions are GRANTED.

### I. Background

This dispute arises out of an August 2016 contract (Laboratory Services Agreement) between Navigant Network Alliance, LLC (n/k/a Navegar Network Alliance, LLC) and Sutter East Bay Hospitals. (Rec. Doc. 1-1 Exhibit A). Under the terms of the Agreement, Navigant was to direct medical patient specimens from its Referral Sources (medical providers with whom Navigant had cultivated a relationship) to Sutter for laboratory testing. When confirmatory testing was required, Navigant made arrangements with a reference lab. In January 2017, Navigant contracted with Poydras Healthcare Advisors, LLC ("PHA"), which had relationships with reference labs. (Rec.

Doc. 1-1 Exhibit B). Plaintiff UNO Health International, Inc. maintains a network of medical testing laboratories. PHA allegedly assigned its payment rights under the Navigant/PHA contract to UNO. (Petition at 5 n.1).

The Agreement between Navigant and Sutter was for a two year term unless terminated earlier. The Agreement contained express termination provisions such that either party could terminate the Agreement immediately for cause, or with at least ninety (90) days prior written notice if without cause. (Rec. Doc. 1-1 Exhibit A at 2 ¶ 3).

According to Sutter, it began to experience mounting problems with Navigant's management and billing methods. On May 3 (or 17th), 2017, Sutter terminated the Agreement but expressly did so without cause. Sutter informed the medical providers (from Navigant's Referral Sources) to send their specimens to Quest Diagnostics Clinical Laboratories. Quest is a competitor with whom Navigant had no business dealings related to the Agreement.

Navigant and UNO filed suit against Sutter in state court on June 26, 2017. Plaintiffs also joined Quest as a defendant. Shortly after filing suit, Plaintiffs persuaded a state court judge to issue a broad TRO against Defendants.[1] Defendants removed the case to this Court and the TRO expired by its own terms 10 days after it was issued. (Rec. Doc. 64—Court's Order denying as moot motions to dissolve the TRO).

Sutter now moves to compel Plaintiffs to arbitrate their claims as required by the Agreement. Quest moves to stay the claims asserted against it pending the arbitration between Plaintiffs and Sutter.

---

[1] Defendants complain that they received only an hour of notice before the TRO issued.

## II. Discussion

### *Sutter's Motion*

Sutter and Navigant were the only two parties to the Laboratory Services Agreement. The Agreement expressly states that California law governs. (Rec. Doc. 1-1 Exhibit A ¶ 9.4). The Agreement has a section entitled Dispute Resolution, which reads:

> ***Any dispute arising out of or in connection with this Agreement, including any questions regarding its existence, interpretation, validity or termination***, will be referred to and definitely resolved by binding arbitration pursuant to the California Code of Civil Procedure Section 1280, et seq., and the arbitration will be administered in accordance with the Streamlined Rules of Judicial Arbitration and Mediation Service (JAMS) rules applicable to commercial arbitrations. The place of arbitration will be Alameda County, California. The judgment of the arbitration tribunal will be accompanied by a written statement of the basis for such judgment and may be enforced by any court having proper jurisdiction. The provisions of this Section will survive the termination of this Agreement.

(Rec. Doc. 1-1 Exhibit A at 5 ¶ 1.1) (emphasis added).

Regardless of whether the Court or the arbitrator determines arbitrability, it is beyond cavil that every claim that Navigant asserts against Sutter is encompassed within this broad arbitration agreement. Navigant can present no colorable argument to the contrary.[2]

Navigant's position is that the Agreement preserves the parties' right to seek injunctive relief in the courts. For this contention Navigant relies upon the references to

---

[2] Navigant argues that California's arbitration procedures authorize this Court to deny enforcement of the arbitration clause. The Court need not address whether the Federal Arbitration Act presents an impediment to that application of California law because the Court finds no merit to Navigant's suggestion that the requisite factors for denying arbitration under California law are satisfied in this case. (Rec. Doc. 35, Opposition at 15 (reciting factors)). To the extent that any of the factors are satisfied, *e.g.*, parallel court proceedings and joinder of third-parties, they resulted from Navigant's own actions. Moreover, all parties to the agreement are sophisticated business entities that willingly and validly contracted for arbitration. That the prospect of arbitration now seems less than desirable to Plaintiffs is not a basis to avoid it.

the JAMS Streamlined Rules, particularly Rule 19(d), and the California arbitration procedures. But the terms of the Agreement aside, citing *Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011), Navigant contends that even where a dispute is subject to arbitration, courts retain the authority to issue injunctive relief to protect the status quo. Navigant contends that the Court should delay ordering arbitration until initial discovery is concluded and Plaintiffs' claims for injunctive relief are resolved.[3]

Even though the Court has the authority to entertain emergency relief, the Court is not persuaded that the injunctive relief that Plaintiffs seek constitutes appropriate "status quo" type of emergency or preliminary relief. Sutter had a contractual right to terminate the Agreement at any time without cause. As Sutter points out, the only point of contention insofar as the termination of the Agreement is concerned is the failure to provide the requisite 90 days of notice. Given that Sutter gave notice of termination on or about May 17, 2017, any order requiring specific performance during the conclusion of the 90 day post-notice period would be an empty gesture because that period is about to end. Moreover, the bulk of the "preliminary" relief that Plaintiffs seek revolves around their efforts to have Sutter pay them approximately $20 million dollars that they alleged is owed to them under the Agreement. For obvious reasons, ordering a party to pay over such a substantial amount of funds is not something that the Court can order as "provisional" relief even if Plaintiffs' precarious financial situation renders it an emergency as to them. Such relief, which is not truly injunctive in nature, would require

---

[3] Plaintiffs have filed a motion for preliminary injunction, which is noticed for submission on August 23, 2017. The relief sought, while characterized as preliminary and provisional in nature, would require a full determination of the merits of the litigation in circumvention of the arbitration agreement. Consideration of the motion for preliminary injunction will be stayed as part of this ruling staying the entire action.

a full determination on the merits which would effectuate an end run around the arbitration provision.

UNO was not a party to the Agreement. UNO's contract was with PHA, whose contract was with Navegar. To the extent that UNO has standing to sue Sutter for any breaches of the Agreement, UNO is likewise subject to the Agreement's arbitration provision. *See USHealth Group, Inc. v. South*, 636 Fed. Appx. 194, 200 (5th Cir. 2015) (unpublished).

In sum, Sutter's motion will be granted insofar as the Court will stay Plaintiffs' claims against Sutter in this litigation pending the conclusion of arbitration proceedings.[4]

### *Quest's Motion*

Quest moves the Court to stay the claims asserted against it, a non-party to the Agreement, pending the final outcome of the anticipated arbitration between Plaintiffs and Sutter. Quest does not contend that Plaintiffs must arbitrate their claims against Quest but rather that Plaintiffs' claims against Quest should be stayed until the arbitration is concluded.

The Court is persuaded that Plaintiffs' claims against Quest should be stayed at this time. The Court agrees that Plaintiffs' claims against Quest are either identical to or inherently inseparable from their claims against Sutter. Any litigation against Quest and the arbitration against Sutter will involve common questions of law and fact.

In sum, Quest's motion will be granted insofar as the Court will stay Plaintiffs' claims against Quest pending the conclusion of arbitration proceedings between Plaintiffs and Sutter.

---

[4] Sutter repeatedly emphasizes that Sutter has not initiated arbitration proceedings. This is irrelevant. It was Navigant, not Sutter, that initiated legal action in the courts of Louisiana.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Compel Arbitration and/or Stay (Rec. Doc. 18)** filed by defendant Sutter East Bay Hospitals, and **Motion to Stay Claims Pending Arbitration (Rec. Doc. 22)** filed by defendant Quest Diagnostics Clinical Laboratories, Inc. are **GRANTED**. This matter is stayed while Plaintiffs and defendant Sutter East Bay Hospitals arbitrate their claims. The Clerk of Court is instructed to close this action for administrative reporting purposes.

August 7, 2017

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE